# Applicability of Section 514 of the 1997 Education Appropriations Act to Post-Secondary Student Aid Programs

Section 514 of the Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act of 1997, which bars the provision of appropriated funds, by contract or grant, to any institution of higher education that denies campus access to military recruiters or Reserve Officer Training Corps representatives, applies to so-called "campus-based" student aid programs, which involve grants to educational entities, but does not apply to direct aid programs, which involve grants to students rather than to educational entities.

August 6, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF EDUCATION

You have requested our advice as to whether certain post-secondary student financial assistance programs administered by the Department of Education ("the Department") are covered by section 514 of the Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act of 1997, which bars the provision of appropriated funds, by contract or grant, to any institution of higher education that denies campus access to military recruiters or Reserve Officer Training Corps ("ROTC") representatives. Letter for Dawn E. Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Judith A. Winston, General Counsel, Department of Education (Mar. 18, 1997) ("Education Letter").

As explained more fully below, we believe that section 514 applies to some, though not all, of the post-secondary student aid programs you have inquired about. More specifically, it is our conclusion that section 514 reaches so-called "campus-based" student aid programs — the Federal Perkins Loan program, the Federal Work-Study program, and the Federal Supplemental Educational Opportunity Grant program — but that it does not affect direct aid programs — the Federal Pell Grant program, the William D. Ford Federal Direct Loan program, and the Federal Family Education Loan program.

## BACKGROUND

Section 514 of the Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act of 1997, as enacted by section 101(e) of the Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104–208, 110 Stat. 3009 (1996) ("the 1997 Appropriations Act"), prohibits federal departments and agencies from using funds appropriated under that legislation to provide grants or contracts to universities or colleges that do not permit

143

ROTC or military recruiting activities on campus. In pertinent part, section 514(a) provides:

> None of the funds made available in this or any other Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act for any fiscal year may be provided by contract or by grant (including a grant of funds to be available for student aid) to a covered educational entity if the Secretary of Defense determines that the covered educational entity has a policy or practice (regardless of when implemented) that either prohibits, or in effect prevents —
>
> > (1) the maintaining, establishing, or operation of a unit of the Senior Reserve Officer Training Corps . . . at the covered educational entity; or
> > (2) a student at the covered educational entity from enrolling in a unit of the Senior Reserve Officer Training Corps at another institution of higher education.

110 Stat. 3009–270. Section 514(b) contains a similar funding prohibition for a "covered educational entity" (defined at subsection (f) as an institution of higher education) that refuses to permit federal military recruiters to conduct recruiting activities on campus or that refuses to give such recruiters access to student information.

Section 514 was offered as an amendment on the floor of the House, during consideration of the 1997 Appropriations Act for the Department of Education. The intent of its sponsors was to ensure equal college campus access to ROTC and military recruiters. *See* 142 Cong. Rec. 16,860 (1996) (statement of Rep. Solomon). As a legislative initiative, the proposed amendment was not new in concept; similar ROTC equal access amendments had been incorporated into other appropriations bills. *See, e.g.*, § 508(a) of H.R. 3816, Energy and Water Development Appropriations Act of 1997, Pub. L. No. 104–206, 110 Stat. 2984, 3003 (1996); § 541 of H.R. 1530, the National Defense Authorization Act for FY 1996, Pub. L. No. 104–106, 110 Stat. 186, 315–16 (1996); § 904 of H.R. 3322, the Omnibus Civilian Science Authorization Act of 1996. However, section 514 represented the first time that such a proposal had been attached to the appropriations bill for the Department of Education.

## ANALYSIS

Section 514 applies to "funds . . . provided by contract or by grant (including a grant of funds to be available for student aid) to a covered educational entity." The question presented by your request is whether this language would include

funds provided to a college or university under the Department's student aid programs. You have asked us to focus on six programs in particular: the Federal Pell Grant program ("Pell Grant"), 20 U.S.C. § 1070a (1994 & Supp. III 1997); the William D. Ford Federal Direct Loan program ("Direct Loan"), 20 U.S.C. §§ 1087a–1087h (1994 & Supp. III 1997); the Federal Family Education Loan program ("FFEL"), 20 U.S.C. §§ 1071–1087-4 (1994 & Supp. III 1997); the Federal Perkins Loan program ("Perkins Loan"), 20 U.S.C. §§ 1087aa–1087ii (1994 & Supp. III 1997); the Federal Work-Study Program ("Work-Study"), 42 U.S.C. §§ 2751–2756b (1994); and the Federal Supplemental Educational Opportunity Grant program ("SEOG"), 20 U.S.C. §§ 1070b–1070b–3 (1994).

These programs can generally be grouped into two categories. In the first category (which includes the Pell Grant, Direct Loan and FFEL programs), grants or loans are made to students by the Department or third parties, and the educational entity acts as the disbursing or escrow agent or fiduciary for the funds. In the case of Pell Grants or Direct Loans, the Department calculates the necessary level of funding for each educational entity based upon the number of eligible students attending the institution, and places the funds in an institutional account targeted for these student aid programs. *See* 20 U.S.C. § 1070a(a); 20 U.S.C. § 1087b. The educational entity then either applies the funds directly to the student's tuition account, or issues a check to the student for living or other educational expenses. *See generally* 34 C.F.R. §§ 668.161–668.166 (1996) (describing cash management in student assistance programs). Under the FFEL program, a local bank or third party loans funds to the student, with the Department acting as guarantor for the loan, and the educational entity acting in essentially the same disbursing capacity as with Pell Grants or Direct Loans. 20 U.S.C. §§ 1071, 1077.

The second category (Perkins Loan, Work-Study, SEOG) includes programs known collectively as "campus-based programs." *See* 34 C.F.R. § 668.2. Under the campus-based programs, it is the educational entity, not the student, that submits an application to the Department for federal funds. Each year, educational entities seeking to participate submit one common application for all three programs, *see* 34 C.F.R. §§ 674.3, 675.3, 676.3; the Department then allocates funds to eligible educational entities primarily on the basis of their allocations from the previous year. *See* 20 U.S.C. §§ 1070b–3, 1087bb; 42 U.S.C. § 2752. Upon receiving a finite share of federal funds to provide financial aid to needy students in the form of loans (Perkins Loan), paid employment (Work-Study), and grants (SEOG), the educational entity has discretion, subject to certain restrictions, to determine which students will receive financial aid. *See* 20 U.S.C. §§ 1070b–2, 1087dd; 42 U.S.C. § 2753; 34 C.F.R. §§ 674.10, 675.10, 676.10. Thus, unlike the first category of aid programs, the campus-based programs require more involvement by the educational entities, in terms of applying for federal funds and determining how those funds will be distributed among needy students. In addition,

the educational entities act as more than mere conduits or escrow agents for the federal funds.

You have suggested that programs within the first category "do not appear to fall within the coverage of section 514 because they involve grants or loans *to students* from the Department or third parties." Education Letter at 3 (emphasis added). We agree. The language of section 514 makes clear that its prohibition applies only to funds "provided by contract or by grant (including a grant of funds to be available for student aid) *to a covered educational entity*" (emphasis added). By its terms, section 514 requires a direct connection between the Department as granting agency and the educational entity as recipient of the grant. In the case of Pell Grants, Direct Loans, and FFEL, the actual grant recipient is not the school but the student. It is the *student* who fills out the application for aid, *see, e.g.*, 20 U.S.C. § 1070a(d); 34 C.F.R. § 685.201(a); the school merely disburses funds that are targeted for specific eligible students. *See* 20 U.S.C. §§ 1070a(b)(5), 1070a(i) (Pell Grant is "awarded to a student"; institution of higher education "disburse[s] to students" the amounts students are eligible to receive under program); 20 U.S.C. § 1087a(a) (authorizing such funds for Direct Loan program "as may be necessary to make loans to all eligible students"). The statute's parenthetical reference to "a grant of funds to be available for student aid," cannot alone bring these programs within the scope of section 514 because they lack the prerequisite grantor-grantee relationship between the Department and the educational entity.

By contrast, the campus-based programs appear to fall well within the scope of section 514. Under the campus-based programs, educational entities themselves apply for federal funds and receive those funds from the Department. Grant money thus flows directly from the Department to the educational entity, to be disbursed to needy students at the entity's discretion. *See* 20 U.S.C. §§ 1087bb(a), 1087cc-1 (under Perkins Loan program, "the Secretary shall first allocate [funds] to each eligible institution;" each institution then "makes a loan to a student borrower"); 42 U.S.C. § 2753(a) (under Work-Study program, Secretary of Education is authorized "to enter into agreements with institutions of higher education under which the Secretary will make grants to such institutions to assist in the operation of work-study programs"); 20 U.S.C. § 1070b(b)(1) (SEOG program enables "the Secretary to make payments to institutions of higher education . . . for use by such institutions for payments to undergraduate students"); *see also Riggsbee v. Bell*, 787 F.2d 1564, 1565–66 (Fed. Cir. 1986) (distinguishing campus-based programs, under which "the federal government gives each participating institution a specific amount . . . [and the] individual institution ha[s] broad discretion to select the students to receive such aid," from Pell Grant program, under which "Secretary of Education makes direct payments to qualified students").

The distinction we make between the first category of aid programs and campus-based programs is one that Congress itself has made in describing the student aid programs under the Higher Education Act:

> The largest title of the Higher Education Act is Title IV, which involves the major student financial aid programs, including Pell Grants, Federal Family Education Loans, and Direct Loans. These three programs provide financial aid directly to the students. In addition, there are three programs that are campus-based financial aid initiatives which provide Federal assistance to postsecondary institutions. The institutions then allocate these funds to qualifying students.

S. Rep. No. 105–5, at 27 (1997) (discussing need to reauthorize Higher Education Act during 105th Congress). In light of the structure of the campus-based programs and Congress's own description of their funding mechanisms, it is difficult to describe such programs as anything other than a "grant of funds to be available for student aid" by the Department to an educational entity; thus, we conclude that they fall squarely within the terms of section 514.[1]

Our conclusion that student aid funds under the Pell Grant, Direct Loan, and FFEL programs are exempt from the prohibition in section 514 is not inconsistent with the Supreme Court's decision in *Grove City College v. Bell*, 465 U.S. 555 (1984). In *Grove City*, the Supreme Court held that, for purposes of the prohibition in title IX against sex discrimination in "any education program or activity receiving Federal financial assistance," student aid in the form of Basic Educational Opportunity Grants ("BEOG"'s, predecessors of the current Pell Grants) constituted "Federal financial assistance" to the school. 465 U.S. at 569–70. Grove City College had chosen to use the Alternative Disbursement System ("ADS") of the BEOG program to administer its student loans. Under ADS, the school was required to certify which students were eligible for grants; once the Department of Education received this certification, it issued checks directly to the eligible students, without any further school involvement. Notwithstanding this relatively minimal involvement by the school, the Supreme Court found that the receipt of federal BEOG funds by some of Grove City's students was sufficient

---

[1] The fact that some courts have described some of the programs at issue here in terms of a trust arrangement, *see California Trade Technical Schools, Inc v United States*, 923 F.2d 641 (9th Cir 1991) (title IV student assistance funds were express trust funds and thus not property of educational institution debtor, for purposes of bankruptcy preferential transfer analysis), *United States v. Maxwell*, 588 F.2d 568 (7th Cir 1978) (because U.S retained "reversionary interest" in SEOG funds, such funds constituted "money, or thing of value of the United States" for purposes of federal criminal statute prohibiting theft or conversion), *cert. denied*, 441 U S 910, *cert. denied*, 444 U S. 877 (1979), does not resolve the question of whether these programs are covered by section 514 The language of section 514 is fully consistent with an interpretation that includes arrangements under which grants are made to institutions serving as trustees for the benefit of third parties

to bring Grove City's financial aid program within the ambit of Title IX. *Id.* at 573–74.

A critical distinction in the relevant language of section 514 leads us to a conclusion different from that reached by the Court in *Grove City.* In contrast to the language of title IX at issue in *Grove City* — "any education program or activity receiving Federal financial assistance" — section 514 refers to funds "provided by contract or by grant" to an educational entity by the Department. Any educational program that is receiving a benefit, direct or indirect, from student financial aid could be said to be receiving federal financial assistance. The restrictive language of section 514 is less susceptible to such an inclusive reading. Moreover, the line we have drawn — between programs that provide direct federal financial aid to individual eligible *students*, regardless of where they attend college, and programs that grant federal funds to individual eligible *schools* for campus-based student aid — is consistent with another line of jurisprudence that examines the nature and effect of student financial aid programs. Recent Establishment Clause decisions by the Supreme Court dispel the proposition that direct government financial aid to individual students necessarily constitutes an impermissible benefit that inures to the school the student chooses to attend. *See Agostini v. Felton,* 521 U.S. 203 (1997); *see also Witters v. Washington Dep't of Servs. for the Blind,* 474 U.S. 481 (1986).

Finally, of critical importance to the Supreme Court's conclusion in *Grove City* was the legislative history of title IX, which made clear that Congress intended the prohibition of section 901 to reach student aid funds. 465 U.S. at 565–69. The Court also drew upon the fact that title IX was patterned after title VI of the Civil Rights Act of 1964, and that the drafters of title VI contemplated the inclusion of student aid funds in identical language. *Id.* at 566. Other cases have refused to extend the holding of *Grove City* beyond title IX, based on the unique legislative history of that statute and the Court's reliance upon that history. *Cf. United States v. Wyncoop,* 11 F.3d 119, 122 (9th Cir. 1993) (criminal statute conferring federal jurisdiction over thefts from an entity that "receives benefits" in excess of $10,000 annually under a federal program involving "federal assistance" does not apply to thefts from college participating in Stafford Loan program).

The legislative history of section 514, as opposed to title IX, dictates a narrow rather than an expansive interpretation. As already noted, section 514 was added as an amendment to H.R. 3755, the appropriations bill for the Departments of Labor, Health and Human Services, Education, and related agencies, during floor debate in the House. *See* 142 Cong. Rec. 16,860. In proposing the amendment, Representative Solomon argued that the amendment had already "passed the House several times" and that "this amendment has always received such strong bipartisan support and become law for Defense Department funds." *Id.* Solomon's statements indicate an intention not to expand the scope of section 514 beyond

existing boundaries for similar provisions in other statutes. Those boundaries did not encompass student aid funds. For example, during floor debate six weeks before the debate on section 514, on an almost identical amendment to the Omnibus Civilian Science Authorization Act of 1996,[2] Representative Lofgren asked Representative Solomon, "[W]ill this include student loans?" 142 Cong. Rec. 12,713. Solomon responded, "It has nothing to do with student loans." *Id.* Lofgren pressed, "Would the prohibition of funds going to a university include Pell grants or student loans for students in universities where ROTC is not offered?" Solomon assured her, "No, it would not. These deal only with research grants." *Id.* While it is true that, because these other bills did not provide appropriations for the Department of Education, they necessarily did not reach general appropriations for the Department's student aid programs, Solomon's statements on the scope of the amendment, together with his assurances that section 514 was no different from prior proposals, suggest a narrow reading of the language of section 514.

## CONCLUSION

We conclude, based upon the language and legislative history of section 514, that student aid funds under the Pell Grant, Direct Loan, and FFEL programs fall outside its prohibition because these programs involve grants from the Department to students rather than to educational entities. However, because the Department provides grants to educational entities under the campus-based programs (Perkins Loan, Work-Study, SEOG), section 514 is applicable to the latter category of programs.

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] That proposed amendment, incorporated as section 904 of the Omnibus Civilian Science Authorization Act of 1996, provided·

No funds appropriated for civilian science activities of the Federal Government may be provided by contract or by grant (including a grant of funds to be available for student aid) to any institution of higher education that has an anti-ROTC policy